**CHARLES SCRIBNER'S SONS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 79–2–00276.**

United States Court of International Trade.

Sept. 30, 1983.

Weil, Gotshal & Manges, New York City (Robert F. Brodegaard and Charles H. Bayar, New York City, at the trial and on brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Commercial Litigation Branch, New York City (Robert H. White, New York City, at the trial), for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan and described on the invoice as the "Engagement Calendar 1979." The merchandise was classified as diaries under Item 256.56 of the Tariff Schedules of the United States (TSUS), as "[b]lank books, bound: [d]iaries," and was consequently assessed with duty at the rate of 10% ad valorem.

Plaintiff protests this classification and contends that the merchandise is properly classifiable under Item 274.10, TSUS, as calendars dutiable at the rate of 6¢ per lb. Plaintiff alternatively contends that the merchandise is properly classifiable under Item 274.75, as printed matter dutiable at the rate of 6¢ per lb., or under Item 256.58, as blank books dutiable at the rate of 4% ad valorem.

The pertinent statutory provisions of the tariff schedules are as follows:

<u>Classified by customs officials under:</u>

256.56   Blank books, bound:
           Diaries, notebooks, and address
           books ......................... 10% ad val.

<u>Claimed by plaintiff under:</u>

274.10   Calendars of paper:
          Printed on paper in whole or
          in part by a lithographic process:
              Not over 0.020 inch in thickness ... 6¢ per lb.

<u>Alternatively claimed by plaintiff under:</u>

274.75   Other:
          Printed on paper in whole or in part
          by a lithographic process:
              Not over 0.020 inch thick ......... 6¢ per lb.

and

256.58   Blank books, bound:
          Other ........................... 4% ad val.

The question presented is whether the imported articles are "diaries" as classified by customs, or "calendars" as claimed by plaintiff. If the imported "Engagement Calendar" is not a calendar within 274.10, then the court must determine whether it is properly classifiable as "[o]ther: [p]rinted on paper in whole or in part by a lithographic process * * *," or as "[b]lank books, bound: [o]ther."

Since the primary purpose of the merchandise is to note dates for future appointments and references, it is the determination of this court that the imported articles are properly classifiable as calendars within the scope of Item 274.10, TSUS, with a duty rate of 6¢ per lb.

At trial, plaintiff presented five witnesses who were responsible for the creation, production, marketing, advertising, purchasing and sale of the "Engagement Calendar." Their testimony reveals distinctions between diaries and calendars with respect to the kind of binding, the type of paper, use of space and the essential purpose of each. Plaintiff contends that the testimony of these witnesses, together with an examination of the article itself, establishes that the imported merchandise has been erroneously classified as diaries.

The first witness, Mr. Ian Ballantine, owner of Ballantine Books, in 1967, conceived the idea of publishing a calendar depicting carefully selected, high-quality nature photography of the Sierra Club. The original calendar, published for 1968, was a wall calendar. In 1969, however, Ballantine Books published a spiral-bound desk version called an "Engagement Calendar" with photographs on the left side and a table of the days of the week on the right side. Mr. Ballantine testified that Scribner's Sons assumed the publishing of the "Engagement Calendar" about four or five years later, and that the format of the desk calendars was never changed. The merchandise in issue in this case, which is the 1979 version of Mr. Ballantine's calendar, is entirely bound and approximately 9⅜ inches long by 6½ inches wide, and contains throughout high-quality photographs of nature scenes. Plaintiff's exhibit 1, which is a representative sample of the importation, is entitled "Wilderness 1979 Sierra Club Engagement Calendar" and depicts, among others, scenes from Yosemite National Park, Grand Canyon, Rocky Mountain National Park and Boulder Mountain Park.

Mr. Ballantine, who has been in the book publishing business since 1939, defined a "calendar" as understood in the publishing business. He stated that it was "a device for keeping dates in front of one, usually there's a group of dates not one date. A place to put down a dentist's appointment." All of plaintiff's witnesses agreed with this definition. Mr. Ballantine also testified that, from the outset, the "Engagement Calendar" was created, published and marketed on a nationwide scale as a calendar, and, in his opinion, could never be considered a diary. He noted that among the physical characteristics which distinguish the merchandise from a diary was the quality of paper, which he stated, was not suited to a large amount of writing. The paper was used to achieve better results in photographic reproduction and contained unlined space allotted to each day of the week, approximately one inch by 14¹³⁄₁₆ inches, which does not allow for lengthy notations typical of diary use.

Mrs. Monica Brown Lamontagne, vice-president of art and production at Scribner's Sons since 1978, testified that the intention of the designers of the calendar was to provide a useful desk calendar, and to have a medium in which to show photographs they thought were exemplary. As a result, approximately 90% of the time, effort and expense in producing the calendar was devoted to the photographs and their reproduction, the quality of which, in her opinion has been responsible for its success. She also testified that although Scribner's Sons had received numerous complaints about the titanium-coated paper, they chose not to change the paper since it was best suited for their primary interest—the promotion of the Sierra Club photographs.

Mr. Franklin L. Rodgers, President and chief operating officer of the plaintiff, testified that all those involved in the negotiations, by which plaintiff obtained publishing rights to the "Engagement Calendar," recognized it as a calendar and not as a diary. Mr. Rodgers also testified that the desk calendar version has been marketed throughout the country as a calendar because it was not suitable as a diary. He

added that the merchandise was unlike diaries because it was not bound like a regular book, and noted that the spiral binding was not permanent. In Mr. Rodger's view, a diary would be expected to have a more permanent type of binding which could be labelled and shelved for future reference.

Mr. Spencer Gale, a buyer for Doubleday Bookstores, testified that he purchased the imported merchandise as calendars, and that they are sold to his customers primarily to note events that will happen in the future. According to Mr. Gale, the purpose of the imported merchandise is to "organize your schedule," and is unsuitable for use in making a daily record of personal reflections or feelings.

Plaintiff contends that the evidence presented at trial has completely rebutted the presumption of correctness which attaches to the Government's classification. 28 U.S.C. § 2639(a)(1) (1976). Plaintiff further contends that the calendar classification, Item 274.10 of Part 5, TSUS, is a more specific classification than Item 256.56 of Part 4, TSUS, and therefore the merchandise should not be classified as a diary since under headnote (1)(ii) of Part 4, Schedule 2, any article that can be classified under Part 5 is excluded from Part 4. In support of this contention plaintiff cites General Interpretative Rule 10(c) which provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it * * *." Plaintiff also contends, in the alternative, that even if the court finds Item 274.10 inapplicable, a more suitable classification still exists, depending upon whether the merchandise is found to be essentially "textual or pictorial matter," or "concerning paper, paperboard and products thereof." If the former, the proper classification would be under Part 5, in Item 274.75, as "[o]ther: [p]rinted on paper in whole or in part by a lithographic process * * *." If the latter, the merchandise would fall under Part 4, in Item 256.58, as "[b]lank books, bound: [o]ther."

Plaintiff contends that the most specific classification of the merchandise is that of calendars. It submits that the essential purpose and physical characteristics of the imported merchandise, together with the testimony of the witnesses, clearly establish the proper classification under Item 274.10, as calendars.

The defendant maintains that the merchandise was properly classified since it comes within the judicially determined meaning of the tariff term "diary." At the trial, it presented the definition of "diary" from Webster's *Third New International Dictionary of the English Language* (1961) as: "a register or record of events, transactions or observations kept daily or at frequent intervals or a daily record of personal activities, reflections or feelings."

Defendant also maintains that the decision in *Brooks Brothers, Div. of Julius Garfinckel & Co., Inc. v. United States,* 68 Cust.Ct. 91, C.D. 4342 (1972), controls the present case since it determined that a spiral bound book, measuring eight inches by ten inches, with blank pages for recording events and appointments, constituted a diary because it conformed to the lexicographical definitions of a diary. In addition, defendant cites *Fred Baumgarten v. United States,* 49 Cust.Ct. 275, Abs. 67150 (1962), where the court noted that "the particular and distinguishing feature of a diary is its suitability for the receipt of daily notations," *Id.* at 276, stating that the "Engagement Calendar" contains ample space to make daily notations.

Aside from the allotted space for each day, defendant asserts that one can make notations on the blank areas under approximately one-third of the photos, as well as the entirely blank page labelled "notes" at the end of the "Engagement Calendar." Since plaintiff did not offer evidence to contradict this fact, defendant submits that the original classification is correct. It also asserts that the primary use of the merchandise is crucial, and that the essential character of the merchandise evolves from the blank spaces which permit daily notations. It contends that since the merchan-

dise is primarily used for completing the blank spaces in the "Engagement Calendar," classification under Item 256.56 should be sustained.

■ It is well established that the lawful and proper classification for imported merchandise is that which "most specifically" describes it. General Interpretative Rule 10(c). To determine the most specific classification of the merchandise in this case, the court must look to its prior decisions which pertain to both diaries and calendars, and examine the available lexicographic definitions of both terms as well as the testimony given at trial.

*Charles F. Sormani & Alltransport, Inc. v. United States,* 33 Cust.Ct. 423, Abs. 58502 (1954), appears to be the only case which has specifically found imported merchandise to be a calendar for customs duty purposes. In that case the court held that a space left for daily notations, which measured approximately three-eighths of an inch by two inches, did not render the merchandise suitable as a diary under the tariff provisions. Hence, the court sustained plaintiff's protest for classification as calendars and stated that they were "not rendered less so because space has been set aside for notations * * *." *Id.* at 424.

Two cases are illustrative of the judicial decisions which have interpreted and applied the term "diary." In the first case, *Fred Baumgarten,* 49 Cust.Ct. 275, Abs. 67150 (1962), the court determined that the merchandise was most suitable for use as a diary because it offered whole pages allocated to "spaces for hourly entries during the course of each day of the year." *Id.* at 276. The court held that the books were designed for the very purpose of recording daily events or transactions, and could not be classified as anything but diaries under Item 256.56, TSUS.

The second case, upon which the defendant relies heavily, is *Brooks Brothers, etc.,* 68 Cust.Ct. 91, C.D. 4342 (1972). In *Brooks Brothers,* based upon *Fred Baumgarten* and other precedent, the court held that merchandise, entitled the "Economist

Diary," was a diary since it was produced, marketed and sold as such, notwithstanding the fact that it contained additional information which the court found did not change the essential nature of the article. While both *Fred Baumgarten* and *Brooks Brothers* establish what is a diary for customs duty purposes, they do not, however, distinguish between a diary and a calendar. Therefore, contrary to the defendant's assertion, they do not govern the result in the present case.

■ Since the tariff schedules are written in the language of commerce, and the terms used are to be given their "commercial" or "common" meaning, *United States v. Victoria Gin Co., Inc.,* 48 CCPA 33, C.A.D. 759 (1960); *Nylos Trading Co. v. United States,* 37 CCPA 71, C.A.D. 423 (1949), this court must examine the lexicographic sources and the testimony given at trial to determine whether the importation is a diary or a calendar.

■ Perhaps the most authoritative dictionary for the purpose of interpreting the tariff schedules is Webster's *Third New International Dictionary of the English Language,* since it was published contemporaneously with the promulgation of the tariff schedules. *Air-Sea Forwarders, Inc. v. United States,* 76 Cust.Ct. 268, C.D. 4665 (1976). In pertinent part, that dictionary defines calendar and diary respectively as follows:

CALENDAR

1: calendar n. * * * 2(a): *a tabular register of days according to a system usu[ally] covering one year,* referring the days of each month to the days of the week. * * * 4: *an orderly list of persons, things or events;* as * * * d: a list of events or activities giving dates and details of planned events * * *; also: a list of events or the series of events scheduled for a particular period of time * * *. [Emphasis added.]

DIARY

1: a register or record of events, transactions or observations kept daily or at frequent intervals: Journal: esp: *a dai-*

ly record of personal activities, reflections, or feelings. 2: a book intended for or used for a diary. [Emphasis added.]

The other authoritative dictionaries reflect the essence of Webster's version. For example, Funk & Wagnall's *New Practical Standard Dictionary of the English Language* (1963) defines the respective terms as follows:

CALENDAR

1: *A systematic arrangement of* subdivisions of times, as *years, months, days, weeks, etc.* * * * 3: *A schedule* or list *of things or events* classified or *chronologically arranged* : [Emphasis added.]

DIARY

1: A record of daily events; especially *a personal record of one's activities, experiences, or observations* ; a journal. 2: A book for keeping such record * * *. [Emphasis added.]

Mr. Ballantine's informal definition, with which all other witnesses agreed, that a calendar is a "device for keeping dates * * [with a] place to put down a dentist's appointment," also comports with the definition found in Webster's dictionary. Thus, to distinguish between the two terms by way of example, a calendar is not primarily intended to be used in connection with extensive notations, but rather as a list or enumeration of persons, things or periods of time. A diary, on the other hand, is primarily intended to be used in connection with extensive notations, and is more like a chronicle or journal which records events, transactions or observations.

The merchandise in issue contains fifty-three calendar pages, each bearing the month at the top and includes seven separate blocks of space devoted to one day of the week. The space allocated to each block is miniscule, measuring approximately one-inch by $4^{13}/_{16}$ inches, and was intended for a notation of no more than a sentence or two. Although there is additional blank space under approximately one-third of the photographs, that space is not uniform, and exists only because some photographs are smaller than others. Thus, that space was obviously not intended to be used primarily for extensive notations.

Witnesses who are now and have been directly responsible for the design, marketing, production and sale of the "Engagement Calendar," testified emphatically that it was created, marketed and sold as a calendar, the main purpose of which was to convey Sierra Club photography. An examination of the article fully supports the testimony. The titanium-coated paper used, for example, was unlined and of a kind more suitable to highlighting the photographs rather than for writing. Both the spiral binding and graphic format further support the testimony that it was created and is purchased primarily as a calendar containing photographs and not as a diary.

Since a diary is a device "suitable for the receipt of daily notations," *Fred Baumgarten,* 49 Cust.Ct. at 276, and the "Engagement Calendar" is clearly not primarily suitable for such a purpose, "it would do violence to the essential nature of the merchandise to classify it under any provision other than the one that describes it perfectly." *Brooks Brothers,* 68 Cust.Ct. at 96.

It is the finding of this court that the testimony of the witnesses, together with an examination of the "Engagement Calendar," establishes that its essential purpose was to convey high-quality Sierra Club photography in the form of a calendar. Further, the additional space which exists in the one blank, two-sided note page, and under approximately eighteen pages of the "Engagement Calendar," clearly does not render the "Engagement Calendar" suitable for diary purposes. Since plaintiff has met its burden of proof, it is unnecessary to consider the alternative claims presented under any of the other tariff provisions.

In view of the foregoing, it is the determination of the court that the imported "Engagement Calendars" are properly classifiable under Item 274.10, TSUS, as "[c]alendars of paper: [p]rinted on paper in whole or in part by a lithographic process: [n]ot over 0.020 inch in thickness" with

duty (as modified by T.D. 68–9) of 6¢ per lb.

Judgment will issue accordingly.